Daniel J. O'Connor, Jr., Bar No. 010081
Justin D. Holm, Bar No. 025202
**O'CONNOR & CAMPBELL, P.C.**
7955 South Priest Drive
Tempe, AZ 85284
daniel.oconnor@occlaw.com
justin.holm@occlaw.com
602-241-7000
*Attorneys for Defendant Philip Mitchell Brailsford, Jr.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MONIQUE PORTILLO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP BRAILSFORD, an Officer of the Mesa, Arizona, Police Department, Individually and in his Official Capacity, JOHN DOES I-7, Officers of the Mesa, Arizona, Police Department, Individually and in their Official Capacities,<br><br>Defendants. | Case No.: 2:18-cv-00178-SRB<br><br>**BRAILSFORD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BASED ON QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM** |

In accordance with FED. R. CIV. P. 8(a) and 12(b)(6), defendant Philip Mitchell Brailsford, Jr. ("Brailsford") moves to dismiss plaintiff's First Amended Complaint. This motion is supported by the following Memorandum of Points and Authorities.[1]

In accordance with General Order 17-08, because Brailsford's motion is "based on … qualified immunity of a public official … the time for the moving party

---

[1] A Certificate of Conferral is attached as **Exhibit 1**.

to answer … shall be set by the Court in its order deciding the motion."[2] The Court should defer Brailsford's responsive-pleading deadline until the Court decides this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiff's Amended Complaint asserts two 42 U.S.C. § 1983 claims to remedy alleged violations of Portillo's constitutional rights. The first claim alleges unlawful arrest/excessive force, and the second alleges unlawful deprivation of property. The Amended Complaint's problem is Brailsford did not arrest Portillo, and he had no control over her property. The Amended Complaint articulates no specific conduct by Brailsford allegedly violating Portillo's Constitutional rights. Further the Amended Complaint demonstrates Brailsford is entitled to qualified immunity on any claims made by Portillo. The Court should dismiss the Amended Complaint.

### Legal Standard

Under FED. R. CIV. P. 12(b)(6), a defendant may move to dismiss when the action fails to allege facts stating a facially "plausible" claim for relief.[3] An action is facially plausible when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] While not a "probability requirement," the plaintiff must demonstrate "more than a *sheer possibility* that a defendant has acted unlawfully."[5] The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[6] Regardless, the court need not assume the truth of legal

---

[2] General Order 17-08, p. 3, ¶ 5(a).
[3] *Bell Atlantic Corp. v. Twombly,* 550, U.S. 544, 570, 127 S. Ct. 1955, 1973-74 (2007).
[4] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (2009).
[5] *Id.* (emphasis added).
[6] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1  conclusions "cast in the form of factual allegations."[7] Conclusory allegations are
2  "insufficient" to defeat a motion to dismiss.[8]

3  Where the inquiries turn on the reasonableness of conduct under the
4  circumstances, video recordings of the incident are compelling evidence.[9] While it is
5  true a court rarely considers material beyond the pleadings on a Rule 12(b)(6)
6  motion, the Court "*may properly* look beyond the complaint *to matters of public*
7  *record*."[10] Where, as here, the inquiries turn on the reasonableness of officer conduct
8  under the circumstances, video recordings of the incident are compelling evidence.[11]
9  The videos can render the facts indisputable and reasonableness becomes a "pure
10 question of law."[12] The Court may *properly* examine both a body-camera video *and*
11 an incident report because each is a public record "essential to a full understanding
12 of the events underlying [plaintiff's] complaint."[13] Officer Brailsford was wearing an
13 AXON Video body camera.[14]

14 Under Fed. R. Civ. P. 12(d), when a Rule 12(b)(6) motion properly presents
15 matters outside of the pleadings, the plaintiff must be given time and the opportunity
16 to marshal her evidence in response to the outside maters. The practical operation
17 of Rule 12(d) is to treat the Motion as one for summary judgement by giving the
18 plaintiff additional time to respond as dictated by the Rule. By attaching the body-
19 camera video, its transcript, and incident report to this motion, Brailsford
20 acknowledges Portillo should be given additional time to respond to it.

---

[7] *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).
[8] *Iqbal*, 556 U.S. at 678, 19 S. Ct. at 1949-50.
[9] *See, e.g. Rodeman v. Foster*, 767 F.Supp.2d 1176, 1183-84 (D. Col. 2011).
[10] *Lihosit*, 2016 WL 2865870, at pp. *3-4 (D. Ariz. (Wake) May 17, 2016) (quoting *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)) (emphasis added).
[11] *See, e.g. Rodeman v. Foster*, 767 F.Supp.2d 1176, 1183-84 (D. Col. 2011).
[12] *Id.* at 1184 (citing *Scott v. Harris*, 550 U.S. 372, 381, n. 8, 127 S. Ct. 1769, 1776 (2007)).
[13] *Id.*
[14] The body-camera video and its transcript are attached as **Exhibits 2 and 3**. All exhibits are authentic copies of the originals.

# Facts[15]

On January 18, 2016, Daniel Shaver was a quest at the La Quinta hotel on Superstition Springs Boulevard. He invited two other hotel guests he met in the hallway, Monique Portillo (plaintiff here) and Luis Nunez, into his room for drinks. While in the room, Shaver opened a gun case to show them a weapon, which was later determined to be an air rifle. Shaver pointed the weapon out the window of his fifth-floor hotel room while showing his guests how to sight it.

Two other hotel guests were sitting in the hot tub, when they looked up to see a figure in a window on the fifth floor holding what appeared to be a rifle with a scope. The scared quests made their way into the lobby, relayed what they had seen to the staff at the front desk, and told the hotel staff to call 911.

Around this time, a La Quinta employee went up to Mr. Shaver's room to investigate. The door to Shaver's room was partially open, and she could see three people in the room, a large case on the floor, and a weapon being handled by those in the room. When Mr. Shaver noticed the La Quinta employee at the door, he slammed the case shut and shut the hotel-room door. Shortly after that, Nunez left the room.

As Mesa Police Department personnel arrived at the hotel, Sergeant Charles Langley formed an immediate-action team. Langley assigned Officers Brailsford and Elmore lethal-coverage duty. Three other officers comprised the rest of the team. After Langley assigned duties, the team made their way to the fifth floor. Once in position near Mr. Shaver's room, Langley issued commands to the occupants of the room. After several attempts with no answer, Langley sent two officers downstairs to get a key card and attempt to make phone contact with the

---

[15] The following summary of facts is gleaned from Mesa Police Department Incident Report No. 2016-0180586, attached as **Exhibit 4** and Exhibits 2 and 3. The Incident report is over 290 pages long. Brailsford has included a PDF of the report on the Exhibit DVD.

occupants of the room. One officer spoke with Shaver and instructed him to have Portillo come out of the room first. Portillo was to exit the room with no possessions, with her hands in the air, and was to follow the instructions of the officers in the hallway. Shaver was told to remain in the room until Portillo was secured, and then to follow the same instructions.

Shortly after hanging up the phone, Portillo exited the room, purse in hand, with Shaver immediately behind her. They were both ordered to lay flat on the ground interlacing their arms and crossing their legs. Both did so. They were both asked if they were drunk, and both answered that they were not. They were asked if anyone else was in the room, and Shaver responded there were no others in the room.

Langley then instructed Portillo to crawl towards officers with her hands in the air. She did so and was taken into custody by Officer Gomez without incident.

Langley then issued the same commands to Shaver, but after coming up to his knees, Shaver put both hands behind his back. Langley told Shaver to put his hands where they could be seen, and he then advised Shaver that if he put his hands behind his back again, the officers would take it as a threat, and he would likely be shot. Shaver said that he understood. Shaver resumed crawling toward the officers, but after a few feet, he moved his right hand to the back of his waistband—an area where suspects carry weapons. When Shaver moved his hand to his waistband out of view, Officer Brailsford shot and killed him. Shaver was unarmed.

## Discussion

**1.     Brailsford did not use excessive force against Portillo.**

42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State" deprives

another of a protected right.[16] 1983 claims require the plaintiff to establish the defendant deprived her of a guaranteed right or privilege.[17] The test has become two-prong requiring the plaintiff establish: (1) "the conduct complained of has been committed under the color of state law;" and (2) the "conduct worked a denial of rights secured by the Constitution or laws of the United States."[18] Unless a plaintiff satisfies *both* prongs, her 1983 claim fails, and the Court should dismiss it.

Negligence—and even gross negligence—are not enough to support a 1983 action.[19] The plaintiff must establish facts demonstrating a specific intent to injure plaintiff.[20] Importantly, courts do not *infer* intent from negligent or grossly negligent conduct—the government official must intend to injure the plaintiff.[21] Plaintiff must also establish a causal connection between the government actors' conduct and her injuries or the claim fails.[22]

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[23] Courts evaluate excessive-force claims in terms of the officer's objective reasonableness based on information possessed during the arrest.[24] The court must balance the right intruded on against the government interest at stake, the nature of the crime, the imminent threat of harm to the police and others, and whether the arrestee was

---

[16] 42 U.S.C. § 1983.
[17] *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1733 (1978).
[18] *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995). *See also James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)(same).
[19] *Gazette v. City of Pontiac*, 341 F.3d 1061, 1066-67 (6th Cir. 1994).
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).
[24] *Id.*, at 396-97, 109 S. Ct. at 1872.

resisting arrest.[25] Importantly, objective reasonableness is based on the perspective of the officer at the scene and <u>not</u> the 20/20 vision of hindsight.[26]

Here is the problem with the Amended Complaint: It does not allege Brailsford ever touched Portillo, let alone used excessive force against her. Nor can it. As the body-camera video shows, Brailsford never left his post in the hallway. He was not the commanding officer in charge of Portillo's arrest. He never spoke to Portillo. He never touched her. He did not handcuff her. He did not escort her from the building. He was not involved with interviewing her after the shooting. Portillo's unlawful-arrest/excessive-force claim fails as a matter of law because Brailsford never touched Portillo.

### 2.     Brailsford did not deprive Portillo of her purse or jacket.

Portillo's unlawful deprivation of property claim also fails as a matter of law. The "facts" in the Amended Complaint belie this truth. Each "fact" is just a legal conclusion generically pled in terms of "Defendants'" actions. Portillo specifically attributes no act allegedly depriving of her property to Brailsford. Nothing in the Amended Complaint pleads unconstitutional conduct by Brailsford against Portillo.

Nor can further amendment cure this flaw by pleading unconstitutional conduct by Brailsford. As the video and incident report demonstrate, Brailsford was relieved of duty immediately after the shooting. He collected none of the evidence related to Portillo's arrest or Shaver's shooting. After the shooting, Mesa Police Department placed him on administrative leave. Shortly thereafter, Mesa Police Department terminated Brailsford. Brailsford did not unconstitutionally deprive Portillo of her property because it was never in his care, custody, or control.

---

[25] *Id.* at 396, 109 S. Ct. 1872.
[26] *Id.*

### 3. Brailsford is entitled to qualified immunity.

Within the last year, the 9th Circuit and United States Supreme Court each decided a case addressing the interplay between excessive-force claims and qualified immunity for municipal employees.[27] The interplay between these claims is not new. Courts use a two-part test to determine whether officers are entitled to qualified immunity.[28] First, the Court must find a violation of a constitutional right.[29] Second, the Court must determine the alleged constitutional right was *clearly established during the alleged misconduct*.[30]

Excessive-force claims require "careful attention to the facts and circumstances for each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[31] The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[32] This evaluation also "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[33]

Police officers are entitled to qualified immunity when the individual's "conduct does not violate clearly established statutory or constitutional rights of which a

---

[27] *S.B. v. San Diego County*, 864 F.3d 1010 (9th Cir. 2017) and *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148 (2018).
[28] *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16 (2009).
[29] *S.B*, 864 F.3d at 1013.
[30] *Id.*
[31] *Kisela*, 584 U.S. ___, 138 S. Ct. at 1152 (internal citations omitted).
[32] *Id.*
[33] *Id.*

reasonable person would have known."[34] "Clearly established" means "the contours of the right must be sufficiently clear that a reasonable [officer] would understand that what [the officer] is doing violates that right."[35] Under this standard, "the focus is on whether the officer had fair notice that [his] conduct was unlawful," and the conduct's "reasonableness is judged *against the backdrop of existing law at the time of the conduct.*"[36] Although this analysis "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate.*"[37] Qualified immunity protects "*all* but the *most plainly incompetent or those who knowingly violate the law.*"[38]

The Courts are "not to define clearly established law at a high level of generality."[39] "Specificity is especially important" because the Court has recognized "it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts."[40] Although the result of the inquiry depends on the fact of each case, "police officers are *entitled* to qualified immunity unless existing precedent *squarely governs the specific facts at issue.*"[41] Cases involving similar facts move the inquiry "beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful."[42]

A "necessary part of the qualified-immunity standard" is the conclusion "an officer cannot be said to have violated a clearly established right *unless the right's*

---

[34] *Id.*
[35] *S.B.*, 864 F.3d at 1015.
[36] *Kisela*, 584 U.S. ___, 138 S. Ct. at 1152 (emphasis added).
[37] *Id.* (emphasis added).
[38] *Id.* (emphasis added).
[39] *Id.*
[40] *Id.* at 584 U.S. ___, 138 S. Ct. at 1152-53.
[41] *Id.* at 584 U.S. ___, 138 S. Ct. at 1153 (internal citations omitted) (emphasis added).
[42] *Id.*

*contours were sufficiently definite that any reasonable official* in the [officer's] shoes would have *understood that he was violating it.*"[43] Importantly, even when a constitutional right has been violated, a municipal employee *may still enjoy qualified immunity* if the right was insufficiently established by prior precedent.[44]

Sections 1 and 2 above articulate why Brailsford did not violate Portillo's constitutional rights. This analysis focuses on whether those rights were clearly established on the night of the shooting.

To overcome Brailsford's entitlement to qualified immunity Portillo must show, as of January 18, 2016, *any* court had upheld Portillo's allegedly violated rights in a *factually similar* case. Portillo must show through established case law Brailsford unlawfully arrested and used excessive force against a woman he did not personally arrest, handcuff, speak to, or touch. No federal court has *ever* considered an excessive-force claim under these circumstances. Similarly, no federal court has *ever* found an unconstitutional deprivation of property against a police officer relieved of duty, who collected none of the evidence, and was later terminated from his employment.

The legal conclusions Portillo has couched as facts in the Amended Complaint belie Brailsford's entitlement to qualified immunity. Portillo fails to specifically identify any act performed by Brailsford constituting either excessive force or unlawful deprivation of property. She has not clearly articulated which rights were violated by Brailsford and through what specific conduct. Instead, she ambiguously pleads legal conclusions and generically attributes them to the "Defendants." The Amended Complaint articulates no obvious constitutional

---

[43] *Id.* (emphasis added).
[44] *Id.*

violations by Brailsford and because he is entitled to qualified immunity, the Amended Complaint should be dismissed without leave to amend.

## Conclusion

Defendant Philip Mitchell Brailsford, Jr. respectfully requests the Court dismiss plaintiff's Amended Complaint with prejudice and without leave to amend.

Dated: May 11, 2018.

**O'CONNOR & CAMPBELL, P.C.**

By: */s/ Justin D. Holm*
    Daniel J. O'Connor, Jr.
    Justin D. Holm
    *Attorneys for Defendant*
    *Philip Mitchell Brailsford, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2018 I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A Notice of Electronic Filing will be served to the following registered participants and a copy will follow by mail:

| | |
|---|---|
| Gene N. Chávez<br>CHAVEZ LAW OFFICES, PA<br>1220 5th Street<br>Albuquerque, NM 87102<br>gene@chavezlawoffices.com<br>*Attorney for Plaintiff* | Honorable Susan R. Bolton<br>UNITED STATES DISTRICT COURT<br>Sandra Day O'Connor<br>U.S. Courthouse, Suite 522<br>401 West Washington Street, SPC 50<br>Phoenix, AZ 85003 |

By: */s/ Amanda Bennett*