Daniel J. O'Connor, Jr., Bar No. 010081
Justin D. Holm, Bar No. 025202
**O'CONNOR & CAMPBELL, P.C.**
7955 South Priest Drive
Tempe, AZ 85284
daniel.oconnor@occlaw.com
justin.holm@occlaw.com
602-241-7000
*Attorneys for Defendant Philip Mitchell Brailsford, Jr.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monique Portillo,<br><br>    Plaintiff,<br><br>vs.<br><br>Philip Brailsford, an Officer of the Mesa, Arizona, Police Department, Individually; City of Mesa, Arizona, and Arizona municipal corporation, acting through John Meza, Chief of Police City of Mesa, in his Official Capacity; Charles J. Langley, an Officer of the Mesa, Arizona, Police Department, Individually; Brian Elmore, an Officer of the Mesa, Arizona, Police Department, Individually; Christopher Doane, an Officer of the Mesa, Arizona, Police Department, Individually; Bryan Cochran, an Officer of the Mesa, Arizona, Police Department, Individually; Richard Gomez, an Officer of the Mesa, Arizona, Police Department, Individually; John/Jane Does I-5, Officers of the Mesa, Arizona, Police Department whose identities have been withheld from Plaintiff, Individually,<br><br>    Defendants. | Case No.: 2:18-cv-00178-SRB<br><br>**DEFENDANT BRAILSFORD'S PARTIAL JOINDER IN CITY OF MESA DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant Philip Brailsford ("Brailsford") partially joins City of Mesa Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.[1] Specifically, Brailsford joins the City of Mesa Defendants with respect to Plaintiff's Fourth Amendment unreasonable-seizure claims.[2] In addition to these arguments, Brailsford affirmatively asserts Plaintiff has already admitted under oath the defendant officers had probable cause to arrest her. Probable cause is an absolute defense to an unlawful-arrest claim. Accordingly, Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

**Introduction**

After the Court's October 12, 2018 Order, the only remaining claim against the individual officers is Plaintiff's Fourth Amendment claim of unlawful detainment or arrest. As articulated in the Second Amended Complaint, this claim is premised on an "integral participant" theory of liability.[3] Plaintiff argues her initial "arrest" was unlawful because Brailsford never had probable cause to believe that she had committed a crime. The Court declined to grant Brailsford's Motion to Dismiss on this claim because he "offered no argument regarding the existence of probable cause to arrest Plaintiff or whether it was objectively reasonable for Defendant to believe that he had probable cause to arrest Plaintiff."[4]

Portillo's undisputed, under-oath, public-record testimony both in her pre-criminal-trial deposition and during Brailsford's criminal trial admits the defendant officers had probable cause to arrest her. Throughout this testimony Portillo

---

[1] Doc. 51.
[2] *Id.*, Section III, pp. 8-11.
[3] See Doc. 37.
[4] *Id.* at 13, ll. 17-20.

repeatedly admitted pointing a gun out of a fifth story window "wasn't right," "didn't look right," and would have been "scary" to anyone who saw it from the outside. Further, in both her deposition and at trial, Portillo admitted she knew pointing a gun out a window was a "serious matter," and Mesa Police responded to the hotel "because of the gun at the window." Probable cause for Portillo's arrest existed on the night of Daniel Shaver's shooting, and Portillo has already admitted its existance under oath—twice.

## Standard of Review

Generally, Courts do not consider material beyond the pleadings in deciding a Rule 12(b)(6) motion. However, the Court may properly look beyond the complaint to matters of public record, and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.[5]

A court may also look to documents on which the complaint necessarily relies, if their authenticity is not contested.[6] Here, the certified transcripts of Portillo's under-oath, deposition and criminal-trial testimony are both public records, and their authenticity is beyond dispute. The Court may consider these transcripts in deciding the present motion, and consideration does not convert the motion to one for summary judgment.

However, even if the motion were converted to one for summary judgment, the Court need only provide the non-moving party with "a reasonable opportunity to present all the material that is pertinent to the motion."[7] Here, no further opportunity is warranted because Portillo cannot offer evidence changing her prior, twice-given, under-oath testimony.

---

[5] *Lihosit v. Flam*, CV-15-01224-PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016), citing *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).
[6] *Id.*, citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).
[7] Fed. R. Civ. P. 12(d).

**I.     The defendant officers had Probable Cause to arrest Portillo.**

*A.     Probable Cause Standard*

Under the Fourth Amendment, a warrantless arrest requires probable cause.[8] Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.[9] Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.[10]

To determine whether an officer had probable cause for an arrest, Courts must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."[11] Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules."[12] It "requires only a probability or substantial chance of criminal activity, *not an actual showing of such activity*."[13] In other words, probable cause "is not a high bar."[14]

---

[8] *United States v. Lopez*, 482 F.3d 1067, 1072–73 (9th Cir. 2007), *citing Michigan v. Summers*, 452 U.S. 692, 700, 101 S. Ct. 2587, 69 L.Ed.2d 340 (1981).
[9] *Id.*, *citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964).
[10] *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L.Ed.2d 769 (2003).
[11] *Id.*, *quoting Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996).
[12] *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983).
[13] *Id.* at 243–244, n. 13, 103 S. Ct. 2317 (1983) (emphasis added).
[14] *Kaley v. United States*, 571 U.S. ——, ——, 134 S. Ct. 1090, 1103, 188 L.Ed.2d 46 (2014); *see also D.C. v. Wesby*, 138 S. Ct. 577, 585–86, 199 L. Ed. 2d 453 (2018).

### B. Plaintiff's Admissions of Probable Cause

Portillo was detained, or "arrested," after being discovered in a hotel room where a rifle was being pointed out of the window. Portillo has admitted the circumstances were highly suspicious, indicative of criminal activity, and justified the defendant officers responding to the hotel to arrest those involved.

During Brailsford's criminal trial, Portillo testified:

> A. So I looked at my surroundings knowing that, Hey, this doesn't look right. There's a gun pointing outside the window --- well, not outside the window, but towards the window. And there's people downstairs.
>
> So I was like, Hey, you guys, you know, like don't be so close to the window. You know, people might get the wrong idea or something, you know, and ---[15]
>
> …
>
> Q. Now, when you came out of the room, you realized this was a serious matter?
>
> A. Yes.
>
> Q. And when you came out, you had in the back of your mind that maybe the police are there as a result of the gun incident?
>
> A. Yes.
>
> Q. Correct?
>
> A. Yes.[16]

During her trial testimony, Portillo repeatedly emphasized pointing a gun out of an elevated, fifth-story window "didn't look right."[17] This testimony is

---

[15] Portillo trial transcript, attached as **Exhibit 1**, p. 24, ll. 5-11. All exhibits are authentic copies of the originals.
[16] Ex. 1, p. 114-115, ll. 21-4.
[17] Ex. 1, p. 28, ll. 17-25; p. 34, ll. 10-23; p. 101, ll. 7-23; p. 103, ll. 19-22; p. 104, ll. 17-23; p. 108-109, ll. 21-15.

consistent with Portillo's under-oath, pre-trial deposition given on February 28, 2017. For example, during her deposition she stated:

> Q. Did you have any idea thinking maybe the was there because of –
>
> A. Of course.
>
> Q. – the gun at the window?
>
> A. Of course, of course.
>
> Q. Because that would be something that would bring the law to the room?
>
> A. Of course.[18]
>
> …
>
> Q. Was he pointing it toward the highway, out the window?
>
> A. Yeah. Because once I recognized my surroundings, I was like no, that doesn't look right.
>
> Q. Why didn't it look right?
>
> A. Just because we were up on the fifth floor, I believe that we were, and you know, there's probably people downstairs, you know. And somebody can see them, you know, and make a call. And what had happened, happened, you know.[19]
>
> …
>
> Q. You did that because you were concerned about what others might think?
>
> A. I was concerned, yeah, like it was pointed towards the window. Somebody can call or, you know, come up and knock on the door, or knock

---

[18] Portillo deposition transcript, attached as **Exhibit 2**, p. 35. ll. 4-11.
[19] Ex. 2, p. 21, ll. 5-13.

on the door that was slightly open. Or, you know, come up here and ask why this gun is out.

Q. So you were concerned before the police arrived about pointing the gun out the window?

A. Yes. I wanted to leave, actually.[20]

…

Q. You were concerned for others?

A. Yes.

Q. Outside the room?

A. Well, yes. For everybody.

Q. Because they might be scared seeing that; right?

A. Well, yeah. I was scared.

Q. You were scared seeing it inside, but you were thinking people outside could also be scared?

A. Yes. Just thinking that somebody could catch it.

Q. If someone saw that up there?

A. Yes.[21]

…

A. ….You know, like he was just showing, but it was – didn't look right, by the window, the way he was ---

Q. Looked like he was going to shoot?

A. Yes.[22]

Portillo's undisputed, under-oath testimony establishes the necessary elements of probable cause. Portillo understood pointing a gun out a fifth-story

---

[20] Ex. 2, p. 24, ll. 4-12.
[21] Ex. 2, p. 27, ll. 7-17.
[22] Ex. 2, p. 45, ll. 9-13.

1 window was a dangerous situation that "did not look right." It was likely to scare
2 people and draw the attention of law enforcement. Portillo admitted she expected
3 law enforcement to arrive and wanted to leave the hotel room. Perhaps most
4 importantly, she admitted when law enforcement did arrive, she knew it was
5 "because [a] gun at the window" was a "serious matter."

6 Through this undisputed testimony, Portillo has conceded, under oath
7 (twice), an objectively reasonable police officer had sufficient knowledge to
8 conclude there was a substantial chance of criminal activity occurring in the hotel
9 room, and as a result, probable cause existed for her arrest.

**Conclusion**

The defendant officers had probable cause to arrest Portillo. For the additional reasons discussed above, and those stated in the City of Mesa Defendants' Motion to Dismiss, Defendant Philip Mitchell Brailsford respectfully requests the Court dismiss Plaintiff's unlawful-arrest claims in her Second Amended Complaint with prejudice.

Dated: January 16, 2019.

**O'CONNOR & CAMPBELL, P.C.**

By: /s/ Justin D. Holm
    Daniel J. O'Connor, Jr.
    Justin D. Holm
    *Attorneys for Defendant*
    *Philip Mitchell Brailsford, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2019 I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System.  A Notice of Electronic Filing will be served to the following registered participants:

| | |
|---|---|
| Gene N. Chávez<br>CHAVEZ LAW OFFICES, PA<br>1220 5th Street<br>Albuquerque, NM 87102<br>gene@chavezlawoffices.com<br>*Attorney for Plaintiff* | Kathleen L. Wieneke<br>Christina Retts<br>WIENEKE LAW GROUP, PLC<br>1095 W. Rio Salado Parkway, Suite 209<br>Tempe, AZ 85281<br>kwieneke@wienekelawgroup.com<br>cretts@wienekelawgroup.com<br>*Attorneys for Defendants City of Mesa, Brian Elmore, Christopher Doane, Bryan Cochran, and Richard Gomez* |

By: */s/ Amanda Bennett*